UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JANE DOE and JOHN DOE,

              Plaintiffs,

    - against -

INTERFAITH MEDICAL CENTER, INC.,

              Defendant.

**CV 05** **COMPLAINT 674**

Civ. No.

JURY TRIAL
DEMANDED

AMON, J.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

FEB - 4 2004

★ BROOKLYN OFFICE ★

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs Jane and John Doe, by their attorneys Debevoise & Plimpton LLP and
New York Lawyers for the Public Interest, Inc., for their complaint against Defendant
Interfaith Medical Center, Inc. ("Interfaith"), allege as follows:

## PRELIMINARY STATEMENT

1.    Plaintiffs Jane and John Doe are deaf.  They are married and communicate
primarily through American Sign Language ("ASL").  In March 2003, Jane Doe spent
nine days as a patient at Interfaith where she was taken by ambulance following a
suicidal episode. Ms. Doe was observed by Interfaith staff to be "very depressed,"
"isolative and withdrawn," and was prescribed individual and group psychotherapy as
well as psychotropic medications.  Throughout the nine days, the Does repeatedly
requested a sign language interpreter so that Ms. Doe could receive and participate in
therapy, understand her medication, and otherwise communicate with hospital staff.
Despite these requests, Interfaith refused to provide an interpreter, except for a single
brief visit on the fifth day of Ms. Doe's stay.  By refusing to provide Ms. Doe with an
effective means of communication, Interfaith discriminated against her on the basis of her

1

21881534v1

disability, denied her the same treatment provided to patients without her disability, and prevented her from participating in decisions affecting the treatment she did receive.

2.      Mr. Doe also needed, and repeatedly requested, an interpreter in order to communicate effectively with Interfaith staff concerning his wife's background, diagnosis, treatment and prognosis. By refusing to provide an interpreter, Interfaith discriminated against him on the basis of his disability, prevented him from participating in the decisions affecting his wife's treatment, and denied him the privileges routinely afforded to family members of other Interfaith patients.

3.      Interfaith's refusal to provide adequate interpreter services during Ms. Doe's hospitalization reflects the hospital's policy and practice of not providing sign language interpreters for patients who are deaf. Because the Does and their children live approximately one block from Interfaith, they have on numerous prior occasions sought emergency and outpatient care there. On virtually every one of these occasions, the Does have been denied an interpreter.

4.      Interfaith's policy and practice of failing to provide interpreters to patients and family members who are deaf discriminates against the Does on the basis of disability by denying them effective communication and adequate and equal health care services because they are deaf. Because they live in such close proximity to Interfaith and regularly utilize services at Interfaith, the Doe family is threatened with receiving discriminatory and inadequate care in the future. Interfaith's discriminatory policy and practice presents a threat of irreparable and recurring harm to the Does.

5.      These discriminatory actions and policies violate (1) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*; (2) Section 504 of

2

the Rehabilitation Act of 1973, 29 U.S.C. § 794; (*3*) the New York State and City Human

Rights Laws, N.Y. Exec. Law § 296(2)(a), New York City, N.Y., Admin. Code § 8-

107(4); and (*4*) the New York Patients' Bill of Rights, 10 N.Y.C.R.R. § 405.7. Plaintiffs

seek damages and injunctive relief under these statutes and regulations.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction over this action under 28 U.S.C.

§ 1331, which provides for original jurisdiction of federal courts in all civil suits arising

under the Constitution and laws of the United States.

7.     The Court also has subject matter jurisdiction under 28 U.S.C.

§ 1343(a)(4), which provides for original jurisdiction of federal courts in all suits arising

under any Act of Congress providing for the protection of civil rights, including the

ADA, 42 U.S.C. § 12188(a)(1) and Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. § 794.

8.     The Court also has subject matter jurisdiction under 28 U.S.C. § 1367.

9.     Venue is proper in the Eastern District of New York under 28 U.S.C.

§ 1391(b), as it is the judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred and in which all parties reside or are located.

10.     Plaintiffs' action for declaratory and injunctive relief, and for other

appropriate relief, is authorized by 28 U.S.C. §§ 2201 and 2202, the ADA (42 U.S.C. §

12181 *et seq.*), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794(a)), Rule

57 of the Federal Rules of Civil Procedure, N.Y. Exec. Law § 296(2)(a), N.Y. Admin.

Code § 8-107(4), and N.Y. Public Health Law § 2801-c.

3

## PARTIES

Plaintiff Jane Doe

11.     Plaintiff Jane Doe, age 32, was a patient at Interfaith from March 22, 2003 to March 31, 2003. Ms. Doe currently lives at 1000 Main Street, Brooklyn, New York, in the same home in which she lived at the time of her hospitalization at Interfaith. Her home is located about a block away from Interfaith.

12.     Ms. Doe is deaf and communicates primarily through ASL. ASL is a complete, complex language that differs dramatically from English and has its own syntax, grammar, and vocabulary. For all but the simplest communication with hearing individuals who do not communicate through ASL, she requires a qualified sign language interpreter.

13.     Ms. Doe is married to John Doe, who also is deaf. They have two children: Jack, who is 9, and Jill, who is 4.

14.     Ms. Doe is an individual with a "disability" for purposes of the ADA and Section 504 of the Rehabilitation Act of 1973, as her hearing impairment constitutes a physical impairment that substantially limits one or more of her major life activities.

15.     Ms. Doe is a person with a "disability" for purposes of the New York State Human Rights Law, as her hearing impairment is a physical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

16.     Ms. Doe is a person with a "disability" for purposes of the New York City Human Rights Law as her hearing impairment constitutes a physical impairment.

17.     Ms. Doe and her children have received emergency and routine care at Interfaith and will receive emergency care there should they need it due to their close geographical proximity to Interfaith. Additionally, Ms. Doe utilizes Interfaith for routine medical needs and intends to continue to do so. As recently as December 2004, Ms. Doe

4

sought routine medical care for an eye infection at Interfaith and Interfaith again failed to provide an interpreter. If Interfaith were compelled to provide effective communication as required by law, Ms. Doe also would seek routine care for her children at Interfaith.

### Plaintiff John Doe

18.     Plaintiff John Doe, age 38, is Jane Doe's husband. Mr. Doe lives with his wife and children in Brooklyn, New York, in the same home in which he lived at the time of his wife's hospitalization at Interfaith. His home is located about a block away from Interfaith.

19.     Mr. Doe is deaf and communicates primarily through ASL. Like his wife, Mr. Doe requires qualified sign language interpreters for all but the simplest communication with hearing individuals who do not communicate through ASL.

20.     Mr. Doe is an individual with a "disability" for the purposes of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, as his hearing impairment constitutes a physical impairment that substantially limits one or more of his major life activities.

21.     Mr. Doe is a person with a "disability" for the purposes of the New York State Human Rights Law, as his hearing impairment is a physical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques.

22.     Mr. Doe is a person with a "disability" for purposes of the New York City Human Rights Law as his hearing impairment constitutes a physical impairment.

23.     Interfaith is where Mr. Doe and his family will receive emergency care while at or near their home because it is the hospital nearest their home. If Interfaith were compelled to provide effective communication as required by law, Mr. Doe also would seek routine care for himself and his children at Interfaith.

21881534v1

Defendant Interfaith Medical Center

24.      Defendant Interfaith is a group of health care facilities, including a
hospital center located at 1545 Atlantic Avenue, Brooklyn, New York 11213. Interfaith
is a private entity, licensed by the New York State Department of Health, which operates
and provides public accommodations as defined in Title III of the ADA, 42 U.S.C. §
12181(7)(F), and whose operations affect commerce, as defined in 42 U.S.C. § 12181(1).

25.      Upon information and belief, Interfaith receives reimbursements under the
Medicaid and Medicare programs. These reimbursements constitute federal funding
under Section 504 of the Rehabilitation Act of 1973, as defined in 45 C.F.R. § 80, App. A
¶ 121 (Medicare) and 45 C.F.R. § 84, App. A, Subpart A, Def. 1 (Medicaid). Thus, the
hospital services at Interfaith are a program or activity that receives federal funding for
the purposes of Section 504 of the Rehabilitation Act of 1973.

26.      As a hospital, Interfaith is a "place of public accommodation" for purposes
of the New York State Human Rights Law and the New York City Human Rights Law.

27.      Interfaith is a "medical facility" and a "hospital" within the meaning of
New York Public Health Law § 2800. Thus, it is required to maintain the minimum
standards set forth in 10 N.Y.C.R.R. § 400 *et seq.*, including those set forth in 10
N.Y.C.R.R. §405.7.


## STATUTORY AND REGULATORY FRAMEWORK


The ADA

28.      On July 26, 1990, Congress passed the ADA to establish a clear and
comprehensive prohibition of discrimination on the basis of disability.

29.      Title III of the ADA prohibits discrimination by "public
accommodations." For purposes of Title III of the ADA, "[t]he following private entities

are considered public accommodations . . . if the operations of such entities affect

commerce -- (F) . . . professional office of a health care provider, hospital, or other

service establishment." 42 U.S.C. § 12181(7).

  30. Title III of the ADA provides, inter alia:

> No individual shall be discriminated against on the basis of
> disability in the full and equal enjoyment of the goods,
> services, facilities, privileges, advantages, or
> accommodations of any place of public accommodation by
> any person who owns, leases (or leases to), or operates a
> place of public accommodation.

42 U.S.C. § 12182(a), see also 28 C.F.R. § 36.201(a)(2000).

  31. Title III of the ADA considers the following, inter alia, to be

"discriminatory":

> (ii) [F]ailure to make reasonable modifications in policies,
> practices, or procedures, when such modifications are
> necessary to afford such goods, services, facilities,
> privileges, advantages or accommodations to individuals
> with disabilities, unless the entity can demonstrate that
> making such modifications would fundamentally alter the
> nature of such goods, services, facilities, privileges,
> advantages or accommodations.
>
> (iii) [F]ailure to take such steps as may be necessary to ensure that
> no individual with a disability is excluded, denied services,
> segregated or otherwise treated differently than other individuals
> because of the absence of auxiliary aides and services, unless the
> entity can demonstrate that taking such steps would fundamentally
> alter the nature of the goods, service, facility, privilege, advantage,
> or accommodation being offered or would result in an undue
> burden."

42 U.S.C. § 12182 (b)(2)(A)(ii) and (iii); see also 28 C.F.R. §§ 36.202(a)-(c)(2000).

  32. Further, Interfaith, as a place of public accommodation:

> (a) [S]hall take those steps that may be necessary to ensure that no
> individual with a disability is excluded, denied services, segregated
> or otherwise treated differently than other individuals because of
> the absence of auxiliary aids and services, unless the public

accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.

(b) . . . The term "auxiliary aids and services" includes –

(1) Qualified interpreters, notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons. . ., videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments;

(c) . . . A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities.

28 C.F.R. §§ 36.303 (a)-(c).

## Section 504 of the Rehabilitation Act of 1973

33.     Section 504 of the Rehabilitation Act of 1973 provides, "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

34.     For the purposes of Section 504 of the Rehabilitation Act, a "program or activity" is defined as, among other things, "an entire corporation, partnership, or other private organization, or an entire sole proprietorship . . . which is principally engaged in the business of providing . . . healthcare . . ." or "the entire plant . . . to which Federal financial assistance is extended . . . ." 29 U.S.C. §§ 794(b)(3)(A)(ii) and 749(b)(3)(B).

8

35.    The administrative regulations promulgated by the Department of Health

and Human Services to enforce the Rehabilitation Act provide, inter alia:

(b) Discriminatory actions prohibited.

(1) A recipient, in providing any aid, benefit, or service, may not, directly
or through contractual, licensing, or other arrangements, on the basis of
handicap:

(i) Deny a qualified handicapped person the opportunity to
participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified handicapped person an opportunity to
participate in or benefit from the aid, benefit, or service that is not
equal to that afforded others;

(iii) Provide a qualified handicapped person with an aid, benefit,
or service that is not as effective as that provided to others;

(iv) Provide different or separate aid, benefits, or services to
handicapped persons or to any class of handicapped persons unless
such action is necessary to provide qualified handicapped persons
with aid, benefits, or services that are as effective as those
provided to others; . . .

(vii) Otherwise limit a qualified handicapped person in the
enjoyment of any right, privilege, advantage, or opportunity
enjoyed by others receiving an aid, benefit, or service.

(2) For purposes of this part, aids, benefits, and services, to be equally
effective, are not required to produce the identical result or level of
achievement for handicapped and nonhandicapped persons, but must
afford handicapped persons equal opportunity to obtain the same result, to
gain the same benefit, or to reach the same level of achievement, in the
most integrated setting appropriate to the person's needs.

(3) Despite the existence of separate or different programs or activities
provided in accordance with this part, a recipient may not deny a qualified
handicapped person the opportunity to participate in such programs or
activities that are not separate or different.

(4) A recipient may not, directly or through contractual or other
arrangements, utilize criteria or methods of administration (i) that have the
effect of subjecting qualified handicapped persons to discrimination on the
basis of handicap, (ii) that have the purpose or effect of defeating or

9

> substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same State.

45 C.F.R. § 84.4 (2004).

New York State Human Rights Law

36. The New York State Human Rights Law provides, in part, that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . ." N.Y. Exec. Law § 296(2)(a).

New York City Human Rights Law

37. The New York City Human Rights Law provides, in part, that "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, because of the actual or perceived . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof. . . ." New York City, N.Y. Admin. Code § 8-107(4).

New York Administrative Code

38. Pursuant to New York Public Health Law, the New York State Department of Health has promulgated minimum standards applicable to hospitals such

10

as Interfaith. Those minimum standards include a "Patients' Bill of Rights," which

includes the rights to:

> (1)     Understand and use these rights. If for any reason you do
> not understand or you need help, the hospital must provide
> assistance, including an interpreter.
>
> (2)     Receive treatment without discrimination as to . . .
> disability. . . .
>
> (8)     Receive complete information about your diagnosis,
> treatment and prognosis. . . .
>
> (14)    Participate in all decisions about your treatment and
> discharge from the hospital.

10 N.Y.C.R.R. § 405.7(c).

39.     Recognizing the obstacles that people who are deaf may confront in

understanding and exercising their rights as patients in a hospital setting, Section 405.7

affirmatively obligates hospitals to provide interpreters to patients who are deaf:

> (a)     In order to assure that patients are made aware of, understand and can
> exercise their rights, the hospital shall meet the following requirements:
>
> > (ii)     interpreters and persons skilled in communicating with vision
> > and/or hearing impaired individuals shall be available to patients in the
> > inpatient and outpatient setting within 20 minutes and to patients in the
> > emergency service within 10 minutes of a request to the hospital
> > administration by the patient, the patient's family or representative or the
> > provider of medical care.

10 N.Y.C.R.R. § 405.7(a).

40.     Recognizing the obstacles that persons who are deaf may confront when

they are serving as patient representatives in a hospital setting, Section 405.7

affirmatively obligates hospitals to "communicate effectively to each . . . patient

representative . . . ."  10 N.Y.C.R.R. § 405.7(a)(5).

21681534v1

## FACTUAL BACKGROUND

### Interfaith Refuses to Provide an Interpreter to Jane Doe

41.     Late in the evening of March 22, 2003, Jane Doe was brought by ambulance to the emergency room at Interfaith exhibiting symptoms of suicidal ideation. Ms. Doe remained at Interfaith until her discharge on or about March 31, 2003.

42.     Upon arriving at the emergency room on or about March 22, 2003, Ms. Doe requested a sign language interpreter, both by attempting to write "interpreter" and by pointing to a sign that stated that patients have the right to an interpreter. Despite these requests, Interfaith failed to provide Ms. Doe with an interpreter for the entire time that Ms. Doe was in the emergency room, and during her transfer to the hospital ward.

43.     On or about March 22, 2003, after being transferred from the emergency room to the hospital ward at Interfaith, Ms. Doe repeatedly asked for an interpreter through written notes with the staff. She also requested the use of a Text Telephone ("TTY"), a phone that allows telephonic communication through typing instead of through voice. Despite her requests, Interfaith refused to provide either an interpreter or a TTY. She was told that the provision of an interpreter was an administrative decision beyond the staff's control.

44.     On or about March 24, 2003, Jane Doe met with an unidentified psychologist at Interfaith. She indicated her need for an interpreter to the psychologist; the psychologist nonetheless attempted to take Ms. Doe's psychiatric history through written questions and responses. Ms. Doe was unable to understand many of the questions or to express herself effectively.

45.     The hospital administered medication to Jane Doe as part of her treatment, but she was never able to learn the nature or potential effects of the medication before taking it because she did not have an interpreter. On or about March 24, 2003, hospital staff demanded that Ms. Doe begin taking medication without explaining the medication's purpose or side effects either through an interpreter or written notes.

Hospital staff summoned a security guard and threatened Ms. Doe with restraints and forcible administration of the medication if she did not cooperate. After Ms. Doe began her medication regime, a doctor attempted to communicate with Ms. Doe regarding her treatment and any medication allergies she might have by using written notes. Ms. Doe was unable to understand the doctor due to her limited ability to read and write English.

46.     Because she had no access to a TTY, Ms. Doe was also unable to contact her family. On or about March 24, 2003, Ms. Doe was finally able to call her husband with the help of another patient who knew rudimentary sign language. Ms. Doe communicated with the patient, who then translated Ms. Doe's words into spoken English for a telephone relay service. The service then transmitted Ms. Doe's message to Mr. Doe by TTY. This fellow patient also asked hospital staff for an interpreter on Ms. Doe's behalf, and translated simple requests between Ms. Doe and the nursing staff. With the assistance of this patient and through written notes, Ms. Doe continued to ask for, and was denied, use of a TTY.

47.     During the initial period of her hospitalization, Interfaith staff described Ms. Doe as "very depressed," "isolative," and "withdrawn." On or about March 23, 2003, an Interfaith physician prescribed a treatment plan for her that included individual and milieu (peer group) therapy. Due to the hospital's refusal to provide an interpreter for Ms. Doe, however, she did not attend group sessions because she was unable to communicate effectively with the other participants without an interpreter. Similarly, Ms. Doe received little benefit from individual therapy sessions because of the lack of an interpreter.

48.     On or about March 26, 2003, Interfaith finally allowed Ms. Doe to use a TTY to call her husband. After that call, the TTY was locked away in an office and Ms. Doe was again denied access to it by the nursing staff.

13

49.     On or about March 26, 2003, an interpreter was made available for two hours for a meeting with Ms. Doe, her therapist, and Mr. Doe. This was the sole occasion during Ms. Doe's nine-day hospitalization that an interpreter was provided.

50.     Aside from affording Ms. Doe a single, brief opportunity to access an interpreter, Interfaith attempted to provide Ms. Doe with psychotherapy entirely through note writing. Note writing was inadequate because Ms. Doe's ability to read and write English is extremely limited and written English is an ineffective form of communication for Ms. Doe for most conversations. Mr. Doe repeatedly tried to inform Interfaith staff that there were words in their notes to Ms. Doe that he knew she could not understand.

51.     On or about March 31, 2003, hospital staff prepared Jane Doe for discharge without an interpreter present even though she requested one. This preparation included a discussion of the medications that she was to take after discharge, detailing dosages and the purposes of the different medications. Ms. Doe was not able to understand the instructions for discharge, including how to take her medications properly. Interfaith's failure to provide an interpreter prevented Ms. Doe from participating in decisions relating to her discharge.

Interfaith Refuses to Provide an Interpreter to John Doe

52.     During Ms. Doe's hospitalization, Interfaith repeatedly failed to provide a sign language interpreter to John Doe, rendering him unable to communicate with hospital staff about his wife's health and medical treatment.

53.     Upon arriving at Interfaith on the evening of March 23, 2003, Mr. Doe communicated to the staff through writing that he and his wife are deaf. He repeatedly requested a sign language interpreter and wrote notes that said "interpreter" and "New York Society for the Deaf." Interfaith did not provide an interpreter.

54.     Later that week, on or about March 26, 2003, John Doe came to the hospital to visit his wife and to speak with her therapist about her treatment. He

14

discovered the written notes that Ms. Doe and the therapist used to communicate during therapeutic sessions. He informed the therapist that there were words in the notes that his wife could not understand, and he reiterated through writing his request for an interpreter.

55.     Throughout his wife's hospitalization, Mr. Doe was stymied in his efforts to understand his wife's diagnosis, treatment and prognosis by Interfaith's refusal to provide an interpreter. Indeed, the only time that Interfaith provided a sign language interpreter to Mr. Doe was on or about March 26, 2003, during a meeting with his wife and her therapist.

## Interfaith Will Not Provide an Interpreter in the Future

56.     The Doe family will receive emergency care as needed in the future at Interfaith because of its proximity to their home. Ms. Doe will continue to receive routine medical care at Interfaith. In the past, both Ms. Doe and the Does' children have received care at Interfaith. Unless Interfaith changes its policy regarding interpreters for deaf patients and family members, the Does are likely to receive discriminatory and inadequate care from Interfaith in the future.

### FIRST CAUSE OF ACTION
(Injunctive and Declaratory Relief Under
Title III of the Americans with Disabilities Act)

57.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 56 hereof.

58.     Jane and John Doe are individuals with disabilities for purposes of the Americans with Disabilities Act because their hearing impairments constitute physical impairments that "substantially limit[] one or more of the major life activities." 42 U.S.C. § 12102(2)(a).

15

21881534v1

59.     As a hospital, Interfaith is a place of public accommodation. See 42

U.S.C. § 12181(7)(F). Interfaith's operations affect interstate commerce.

60.     The Does live in close proximity to Interfaith and will continue to seek

services from Interfaith, including emergency and routine care for themselves and their

children.

61.     Mr. and Ms. Doe require qualified sign language interpreters to

communicate with individuals who do not communicate using sign language.

62.     Interfaith's current policy and practice do not ensure that patients who are

deaf and require sign language interpreters for effective communication will receive such

interpreters.

63.     Interfaith's current policy and practice present a real and immediate threat

of future irreparable harm to plaintiffs because they are likely to go to Interfaith if they or

their children need certain medical services, in violation of 42 U.S.C. § 12182(a).

64.     Jane and John Doe have no adequate remedy at law for Interfaith's

violation of 42 U.S.C. § 12182(a).

## SECOND CAUSE OF ACTION
### (Damages for Violation of Plaintiffs' Rights Under
§ 504 of the Rehabilitation Act of 1973)

65.     Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 64 hereof.

66.     Jane and John Doe are individuals with disabilities, as their hearing

impairments constitute physical impairments that "substantially limit[] one or more of the

major life activities." 29 U.S.C. § 705(20)(B).

67.     Interfaith is principally engaged in the business of providing health care and thus is a "program or activity" as defined in 29 U.S.C. § 794(b)(3)(A)(ii).

68.     Interfaith is subject to Section 504 because, upon information and belief, it receives Federal financial assistance in the form of Medicaid and Medicare payments. 29 U.S.C. § 794(b)(3)(B).

69.     During the period from March 22, 2003 to March 31, 2003, despite repeated requests, Interfaith repeatedly failed to provide a qualified sign language interpreter, precluding effective communication between plaintiffs and the hospital staff.

70.     Interfaith's current policy and practice injured plaintiffs because it did not provide them with needed sign language interpretation.

71.     By reason of the foregoing acts, Interfaith intentionally discriminated against plaintiffs and acted with deliberate indifference to their repeated requests for a sign language interpreter in violation of 29 U.S.C. § 794.

72.     As a result of Interfaith's actions described above, plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
(Injunctive and Declaratory Relief Under
§ 504 of the Rehabilitation Act of 1973)

73.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 72 hereof.

74.     Jane and John Doe are individuals with disabilities, as their hearing impairments constitute physical impairments that "substantially limit[] one or more of the major life activities." 29 U.S.C. § 705(20)(B).

17

75.    The Does live in close proximity to Interfaith and will continue to seek services from Interfaith including emergency and routine care for themselves and their children.

76.    Interfaith is principally engaged in the business of providing health care and thus is a "program or activity" as defined in 29 U.S.C. § 794(b)(3)(A)(ii).

77.    Interfaith is subject to Section 504 because, upon information and belief, it receives Federal financial assistance in the form of Medicaid and Medicare payments. 29 U.S.C. § 794(b)(3)(B).

78.    Interfaith's current policy and practice present a real and immediate threat of future injury to plaintiffs because they will go to Interfaith if they or their children need certain medical services.  Based on its policy and practice, Interfaith would not provide the Does with qualified sign language interpreters in violation of 29 U.S.C. § 794.

79.    Jane and John Doe have no adequate remedy at law for Interfaith's violation of 29 U.S.C. § 794.

### FOURTH CAUSE OF ACTION
#### (Damages for Violation of Plaintiffs' Rights Under the New York State Human Rights Law)

80.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 79 hereof.

81.    Jane and John Doe are persons with disabilities, as their hearing impairments constitute physical impairments resulting from "anatomical, physiological, genetic or neurological conditions, which prevent[] the exercise of a normal bodily

21381534v1

function or [are] demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292 (21)(a).

82.   As a hospital, Interfaith is a place of public accommodation, as defined in N.Y. Exec. Law § 292(9).

83.   From March 22, 2003 to March 31, 2003, despite repeated requests, Interfaith repeatedly failed to provide effective communication to Jane and John Doe concerning Ms. Doe's medical treatment and condition.  This failure to provide effective communication violated the New York State Human Rights Law, N.Y. Exec. Law § 296(2)(a).

84.   By reason of the foregoing acts, Interfaith intentionally discriminated against Jane and John Doe and acted with deliberate indifference to their repeated requests for a sign language interpreter in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2)(a).

85.   By reason of the foregoing acts, Interfaith intentionally discriminated against the Does and acted with deliberate indifference to their repeated requests for a sign language interpreter in violation N.Y. Exec. Law § 296(2)(a).

86.   As a result of Interfaith's actions described above, the Does were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Injunctive and Declaratory Relief
### Under the New York State Human Rights Law)

87.    Plaintiffs repeat and reallege each and every allegation contained in
paragraphs 1 through 86 hereof.

88.    Jane and John Doe are persons with disabilities, as their hearing
impairments constitute physical impairments resulting from "anatomical, physiological,
genetic or neurological conditions, which prevent[] the exercise of a normal bodily
function or [are] demonstrable by medically accepted clinical or laboratory diagnostic
techniques." N.Y. Exec. Law § 292 (21)(a).

89.    As a hospital, Interfaith is a place of public accommodation, as defined in
N.Y. Exec. Law § 292(9).

90.    The Does live in close proximity to Interfaith and will continue to seek
services from Interfaith including emergency and routine care for themselves or their
children.

91.    From March 22, 2003 to March 31, 2003, Interfaith repeatedly failed to
provide effective communication to Jane and John Doe concerning her medical treatment
and condition. This failure to provide effective communication violated the New York
State Human Rights Law, N.Y. Exec. Law § 296(2)(a).

92.    By reason of the foregoing acts, Interfaith intentionally discriminated
against Jane and John Doe and acted with deliberate indifference to their repeated
requests for a sign language interpreter in violation of the New York State Human Rights
Law, N.Y. Exec. Law § 296(2)(a).

93.     Interfaith's current policy and practice present a real and immediate threat of future injury to plaintiffs because they will go to Interfaith if they or their children need certain medical services. Based on its policy and practice, Interfaith would not provide the Does with qualified sign language interpreters in violation of N.Y. Exec. Law § 296(2)(a).

94.     By reason of the foregoing acts, Interfaith poses a serious risk of discrimination against the Does that constitutes irreparable harm, in violation of N.Y. Exec. Law § 296(2)(a).

95.     The Does have no adequate remedy at law for Interfaith's violation of N.Y. Exec. Law § 296(2)(a).

### SIXTH CAUSE OF ACTION
**(Damages for Violation of Plaintiffs' Rights Under the New York City Human Rights Law)**

96.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 95 hereof.

97.     Jane and John Doe are persons with disabilities for purposes of the New York City Human Rights Law, as their hearing impairments constitute physical impairments under New York City, N.Y., Admin. Code, § 8-102(16).

98.     Interfaith is a place of public accommodation as it is a provider of "goods, services, facilities, accommodations, [and] advantages" as defined in New York City, N.Y., Admin. Code § 8-102(9).

99.     From March 22, 2003 to March 31, 2003, despite repeated requests, Interfaith maliciously and/or with reckless indifference deprived Jane and John Doe of their rights under the New York City Human Rights Law by repeatedly failing to provide

21881534v1

them with effective communication. See New York City, N.Y., Admin. Code, § 8-107(4).

100.    As a result of Interfaith's actions described above, Jane and John Doe were damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Injunctive and Declaratory Relief
### Under the New York City Human Rights Law)

101.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 100 hereof.

102.    Jane and John Doe are persons with disabilities for purposes of the New York City Human Rights Law, as their hearing impairments constitute physical impairments under New York City, N.Y., Admin. Code § 8-102(16).

103.    Interfaith is a place of public accommodation as it is a provider of "goods, services, facilities, accommodations, [and] advantages" as defined in New York City, N.Y., Admin. Code, § 8-102(9).

104.    Jane and John Doe live in close proximity to Interfaith and will continue to seek services from Interfaith including emergency and routine care for themselves or their children.

105.    From March 22, 2003 to March 31, 2003, Interfaith, maliciously and/or with reckless indifference deprived Jane and John Doe of their rights under the New York City Human Rights Law by repeatedly failing to provide them with effective communication. See New York City, N.Y., Admin. Code, § 8-107(4).

106.    Because of Interfaith's discriminatory policy and practice of not providing sign language interpreter services, Interfaith will continue to discriminate against Jane

22

and John Doe, which discrimination constitutes irreparable harm in violation of the New

York City Human Rights Law.

107.    Jane and John Doe have no adequate remedy at law for Interfaith's

violation of the New York City Human Rights Law, New York City, N.Y., Admin. Code

§ 8-107(4).

## EIGHTH CAUSE OF ACTION
### (Injunctive and Declaratory Relief
### Under the New York Patients' Bill of Rights )

108.    Plaintiffs repeat and reallege each and every allegation contained in

paragraphs 1 through 107 hereof.

109.    Interfaith is a "medical facility" and a "hospital" within the meaning of

New York Public Health Law § 2800, and is required to maintain the minimum standards

set forth in 10 N.Y.C.R.R. § 400 *et seq.*, including those set forth in 10 N.Y.C.R.R.

§405.7.

110.    Interfaith's discriminatory policy and practice of refusing to provide

interpreters requested by patients who are deaf violates the minimum standards set forth

in 10 N.Y.C.R.R. §405.7. Those standards were violated with respect to Ms. Doe

because, despite Mr. and Ms. Doe's repeated requests for interpreter services, she was

denied (*a*) treatment equal to patients who are not deaf; (*b*) complete information

concerning her diagnosis, treatment and prognosis; (*c*) the effective right to participate in

decisions affecting her treatment and discharge; and (*d*) the services of an interpreter that

would have enabled her to effectuate and exercise the foregoing rights.

111.    Under the New York Administrative Code, Interfaith is required to meet

these minimum standards for effective communication not only with a patient who is

23

deaf, but also with a "patient representative" who is deaf. 10 N.Y.C.R.R. §405.7(a)(5). Interfaith repeatedly failed to meet this standard with respect to Mr. Doe's role as a representative for his wife during her hospitalization, and with respect to the Does' parental role in connection with their children's health care received at Interfaith.

112.    Interfaith's current policy and practice present a real and immediate threat of future injury to plaintiffs because they will go to Interfaith if they or their children need certain medical services. Based on its policy and practice, Interfaith would not provide the Does with qualified sign language interpreters in violation of 10 N.Y.C.R.R. §405.7.

113.    The Does have no adequate remedy at law for Interfaith's continuing violation of 10 N.Y.C.R.R. § 405.7.

## JURY DEMAND

114.    Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs John and Jane Doe respectfully request that a judgment be rendered against Defendant Interfaith as follows:

(a)    declaring that Interfaith's practices in refusing to provide a qualified sign language interpreter violate Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182;

(b)    declaring that Interfaith's practices in refusing to provide a qualified sign language interpreter violate Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

21881834v1

(c)    awarding such damages, and the costs and disbursements of this action, as are permitted by Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

(d)    declaring that Interfaith's practices in refusing to provide a qualified sign language interpreter violate the New York State Human Rights Law, N.Y. Exec. § 296;

(e)    awarding such damages, and the costs and disbursements of this action, as are permitted by the New York State Human Rights Law;

(f)    declaring that Interfaith's practices in refusing to provide a qualified sign language interpreter violate the New York City Human Rights Law, New York City, N.Y., Admin. Code § 8-107(4);

(g)    awarding such damages, including punitive damages, and the costs and disbursements of this action, as are permitted by the New York City Human Rights Law;

(h)    declaring that Interfaith's practice of refusing to provide skilled interpreters and/or persons skilled in communicating with hearing impaired persons violates 10 N.Y.C.R.R. § 405.7;

(i)    ordering an injunction requiring Interfaith to adopt and implement policies to provide qualified sign language interpretation to patients and/or family members who are deaf or hearing impaired in full compliance with the requirements of Title III of the ADA, 42 U.S.C. §§ 12181- 12189, § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the New York State

Human Rights Law, N.Y. Exec. § 296, the New York City Human Rights

Law, N.Y.C. Admin. Code, § 8-107, ¶ 4, and 10 N.Y.C.R.R. § 405.7;

(j)     awarding attorneys' fees, costs, expenses, and such other further relief, at

law or in equity, to which Plaintiffs justly may be entitled; and

(k)     granting Plaintiffs such other and further relief as the Court may deem

just, equitable and proper.

Dated: New York, New York
January 31, 2005

DEBEVOISE & PLIMPTON LLP
By: _____
Steve Vaccaro (SV-4644)
Ethan J. Leib (EL-6700)
919 Third Avenue
New York, New York  10022
Tel: (212) 909-6000
Fax: (212) 909-6836

and

NEW YORK LAWYERS FOR THE
PUBLIC INTEREST, INC.
Michael D. Silverman (MS-1116)
Marianne L. Engelman Lado (ML-6749)
Rebecca Price (RP-5014)
151 West 30th Street, 11th Floor
New York, New York  10001
Tel: (212) 244-4664
Fax: (212) 244-4570

Attorneys for Plaintiffs