UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
████████ and ████████

                Plaintiffs,

        - against -

INTERFAITH MEDICAL CENTER, INC.,

                Defendant.
------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 31 2006 ★

P.M. _____
TIME A.M. _____
05 CV 0674 (CBA) (MDG)

**CONSENT ORDER OF
SETTLEMENT & DISMISSAL**

        ████████ and ████████ (collectively referred to as "Plaintiffs") initiated this action pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12181-12189, the New York State Human Rights Law, N.Y. Exec. Law §290, et seq. and the New York City Human Rights Law, N.Y. Admin Code §8-101, et seq., alleging, inter alia, that Defendant violated these statutes by discriminating on the basis of disability against persons who are deaf. The complaint alleges, inter alia, that defendant Interfaith Medical Center, Inc. ("Interfaith" or the "Hospital"), did not provide a qualified sign language interpreter for ████████ or her husband, who are deaf, during Mrs. ████████ eight-day psychiatric hospitalization at the Hospital in March 2003.

        Plaintiffs allege that Interfaith's failure to provide qualified sign language interpreters and/or other aids and services necessary for effective communication constitutes discrimination on the basis of disability within the meaning of Section 302 of the ADA, 42 U.S.C. §12182, the New York State Human Rights Law, N.Y. Exec. Law §290, et seq. and the New York City Human Rights Law, New York City, N.Y. Admin. Code §8-101, et seq.

Plaintiffs and Defendant agree that this Court has jurisdiction over the parties and subject matter of these actions. The parties agree that the controversy should be resolved without further proceedings, without an evidentiary hearing, and without a determination or admission of liability or wrongdoing. The parties have consented to entry of this Consent Order of Settlement and Dismissal ("Consent Order"), as indicated by the signatures appearing below.

It is therefore ORDERED, ADJUDGED AND DECREED:

## PLAINTIFFS' OBLIGATIONS

Plaintiffs agree to settle, discharge and waive all of their claims which were or could be raised in this Action in exchange for Interfaith's commitments as set forth herein and on such other terms as the parties agree separately in writing. Plaintiffs and their counsel also agree not to publicize or engage in public comment about the settlement of this matter, except as agreed in writing between the parties.

## INTERFAITH'S OBLIGATIONS

**I. ADOPTION OF POLICY**

A. Interfaith will adopt and maintain a policy regarding the provision of appropriate communication and auxiliary aids and services for the deaf and hearing-impaired, in the form set forth in Appendix A hereto, titled "services for patients and their companions who are deaf or hard of hearing."

B. Interfaith will conduct training on the new policy and monitor its application in accordance with the policy set forth in Appendix B hereto.

C. Implementation of the policies set forth in Appendices A & B shall commence as Interfaith obtains the equipment and supplies necessary to do so and shall be complete within one hundred and twenty (120) days of the date of entry of this Consent Order. In the event that implementation is not complete by the 120th day following entry of this Consent Order, Interfaith may be subjected to the imposition of a penalty of up to $150 per day, which "penalty" shall be donated to League for the Hard of Hearing, until implementation is complete, unless the failure to complete implementation results from circumstances not within the control of Interfaith or the Court otherwise determines that a penalty would be unjust in light of the circumstances. If it appears that the completion of implementation will extend beyond 120 days, the parties shall consult in good faith prior to any application to the Court in an effort to resolve amicably whether the circumstances warrant imposition of a penalty. If the parties cannot agree, the Court shall determine if a penalty is appropriate and the amount, within the limits stated herein. Interfaith will provide a written notice to Plaintiffs' counsel of the date on which implementation has been completed and file a copy of said notice with the court.

## II. MAINTENANCE OF POLICY

A. Interfaith will continue and maintain policies set forth in Appendices A & B for three years from the date that implementation is complete, as described in I.C. ("the maintenance period").

B. Interfaith may make changes in the policies set forth in Appendices A & B during the maintenance period as follows:

1. To comply with any change in the law, whether statutory, regulatory, or imposed by court or agency order or decree in any matter or case involving or affecting

Interfaith. If Interfaith makes any changes pursuant to this subsection, it will promptly file, and serve on plaintiffs' counsel, written notice of the changes with the Court.

    2. If a change in circumstances creates opportunities for communicating with patients or their companions more efficiently or effectively than the policies set forth in Appendices A & B, or creates difficulties not presently contemplated in the implementation of the policies set forth in Appendices A & B, Interfaith may adopt changes to its policies by presenting written notice to Plaintiffs' counsel, for comment and/or objection, such notice to be provided at least thirty (30) days prior to Interfaith's implementation of the proposed changes. Thereafter: (a) If Plaintiffs have objections or comments on the proposed changes, the parties will negotiate in good faith to reach a mutually acceptable solution. (i) If they reach such a solution, written notice of the changes shall be filed with the Court. (ii) If they do not reach a mutually acceptable solution, either party may apply to the Court to receive approval for an appropriate modification of the affected policy or policies. (b) Any objections or comments must be placed in writing and transmitted to the Hospital's chief executive officer no later than ten (10) days prior to the date on which Interfaith has proposed to implement the proposed change. (c) If Plaintiffs raise no objections or comments within thirty days of receiving notice, Interfaith may proceed without impediment to implement its proposed changes and shall file with the Court written notice of the changes.

### III.   ENFORCEMENT OF OBLIGATIONS

  A. If Interfaith fails to fulfill its obligations under the policies set forth in Appendices A & B, Plaintiffs will have such remedies as are allowed by law.

  B. Notwithstanding the provision of Section III(A) above, in the event that Plaintiffs believe that Interfaith has failed to fulfill its obligations under the policies set forth in

Appendices A & B, Plaintiffs will give notice (including reasonable particulars) of such violation to the Hospital's chief executive officer, and the Hospital must then respond to such notice no later than thirty (30) days thereafter and/or cure such non-fulfillment as soon as practicable, such cure to be initiated within thirty (30) days after receiving notice from Plaintiffs and, when practicable, completed within that same period of time. The parties will negotiate in good faith in an attempt to resolve any dispute relating thereto before seeking relief under Section A above.

      C.     During the maintenance period, Interfaith shall afford Plaintiffs' counsel reasonable, occasional access to (1) documentation concerning training of Interfaith staff in the Hospital's policies concerning the availability and/or operation of certain equipment related to the Communication and Auxiliary Aids (as defined in Interfaith's policies) offered, (2) documentation pertaining to requests for Communication or Auxiliary Aids (and outcomes of those requests), and (3) documentation of any complaints regarding requests for Communication or Auxiliary Aids. All such documentation may be edited, redacted, or otherwise conformed to the legal requirements of the privacy rules of the Health Insurance Portability and Accountability Act (HIPAA) and any other laws or regulations which protect patient-related information or regulate the release of same. To the extent documents are redacted or withheld, and an explanation of such redaction or withholding is necessary, Interfaith shall provide a written explanation of same. For purposes of this Section, reasonable, occasional access means that Plaintiffs' counsel will be afforded access to the documentation three times in the first year and twice per year in the second and third years of the maintenance period, at Interfaith's offices, during regular business hours, to be scheduled in advance with Interfaith. At Interfaith's sole discretion, this obligation may be discharged by sending copies of the requested documentation to Plaintiffs' counsel or by making such copies available for inspection at a mutually acceptable

site other than Interfaith's offices. The parties shall agree, in that separate writing, dated September 30, 2006, that does not require court approval, to the specifics of the inspection, including specification of the documents described above in this Section III. C. and the procedures to be followed.

## IV.   MISCELLANEOUS

A.   <u>No Admission of Liability</u>:  By consenting to entry of this Order, Interfaith does not admit to any violation of any statute, law, regulation, or ordinance, and expressly denies having committed any such violation.

B.   <u>Compensation to Plaintiffs & Attorney's Fees</u>:  The matter of the payment of any monetary compensation to plaintiffs and their attorney's fees will be fully resolved in a separate written agreement entitled Statement of Terms of Monetary Settlement.

C.   <u>Binding</u>:  This Order is final and binding on the parties, including all principals, agents, executors, administrators, representatives, employees, successors in interest, beneficiaries, assigns, heirs and legal representatives thereof. Each party has a duty to so inform any such successor in interest and to timely notify all parties of all such successors in writing. In the event Interfaith seeks to transfer or assign all or part of its interest in any facility covered by this Order, and the successors or assign intends on carrying on the same or similar use of the facility, as a condition of sale Interfaith shall obtain the written accession of the successor or assign to any obligations remaining under this Order for the maintenance period.

D.   <u>Non waiver</u>:  Failure by Plaintiffs to seek enforcement of this Order pursuant to its terms with respect to any instance or provision will not be construed as a waiver to such enforcement with regard to other instances or provisions.

E.  <u>Severability</u>:  In the event that the Court determines that any provision of this Order is unenforceable, such provision will be severed from this Order and all other provisions will remain valid and enforceable, provided, however, that if severance of any such provision materially alters the rights or obligations of the Parties hereunder, they will, through reasonable, good faith negotiations, agree upon such other amendments hereto as may be necessary to restore the Parties as closely as possible to the relative rights and obligations initially intended by them hereunder.

F.  <u>Dismissal with Prejudice</u>:  The Complaint shall be dismissed with prejudice, except that either plaintiff may petition the Court, at any time during the maintenance period, to reopen the case for the purpose of enforcing this Order, and the Court shall retain jurisdiction to enforce this Order.

**Consent to the entry of the foregoing order is hereby acknowledged and freely given:**

PLAINTIFFS



DEFENDANT

_____
INTERFAITH MEDICAL CENTER
By: Edward Glicksman, President & CEO

DEBEVOISE & PLIMPTON LLP
_____
Steve Vaccaro (SV 4644)
919 Third Avenue
New York, New York  10022
Tel.: (212) 909 – 6000
Fax: (212) 909 – 6836
*Attorneys for Plaintiffs*

EPSTEIN BECKER & GREEN, P.C.
_____
John Houston Pope (JP 1376)
~~250 Park~~ Avenue
New York, New York  10177-1211
Tel.: (212) 351 – 4500
Fax: (212) 661 – 0989
*Attorneys for Defendant*

NEW YORK LAWYERS FOR THE PUBLIC
INTEREST, INC.

*[signature]*

Marianne L. Engelman Lado (ML 6749)
Amanda Masters (AM 1116)
Rebecca Price (RP 5014)
151 West 30th Street, 11th Floor
New York, New York 10001
Tel.: (212) 244 – 4664
Fax: (212) 244 – 4570
*Attorneys for Plaintiffs*

APPENDIX A


**Interfaith Medical Center**

**ADMINISTRATIVE MANUAL**

TITLE: services for patients and their companions who are deaf or hard of hearing
EFFECTIVE DATE:

Policy #:

JCAHO Standard: RI
By: _____
Page __ of __

Location(s) of Policy: HAM – C-HAM

---

**POLICY:** It is the policy of Interfaith Medical Center to provide meaningful access to quality health care services to all individuals including those who are deaf or hard of hearing.

**PURPOSE:**

1.0 To ensure that individuals who are deaf or hard of hearing receive auxiliary aids including sign language interpreters, TTYs, closed captioned TV, amplified telephones, and other amplified listening devices.

2.0 To ensure that communication with individuals who are deaf or hard of hearing is as effective as communication with others. (28 C.F.R. 36.30.3 (c))

**DEFINITIONS / GLOSSARY**

1.0 SLI : Sign Language Interpreter

2.0 TTY : Telephone Communications for the Deaf

3.0 VRS : Video Relay Service

**ATTACHMENTS:**

Addendum A. "Request for Communication or Auxiliary Aid" form

**POLICY / PROCEDURE**

**1.0 REQUESTS FOR COMMUNICATION AIDS**

Requests for communication aids (i.e., SLI, TTY, VRS) should be directed to the Department of Patient Relations between 9:00 AM and 5:00 PM. Before 9:00 AM, after 5:00 PM, and during weekends and holidays, the Assistant Director of Nursing (A.D.N.) on duty will handle such requests. A "Request for Communication or Auxiliary Aids" form must be completed when a request is made, and the form must be returned to the Patient Relations Department immediately. During off hours, the form should be given to the A.D.N., who will provide the

Policy.DOC

completed form to Patient Relations. Upon receipt of the Request form, the communication aid will be provided to the patient or patient representative as soon as practicable by the Patient Relations Department or A.D.N. The Patient Relations Department or A.D.N. may require staff assistance in providing the communication aid to the patient or patient representative. Communication Aids must be provided as quickly as possible, and staff must take all appropriate steps to ensure that there is no undue delay in this process.

### 1.1 SIGN LANGUAGE INTERPRETERS (SLI)

SLIs are called in when a patient, patient's family member, companion, or associate, physician, nurse, or other professional staff member, <u>requests</u> or <u>determines</u> a need for an interpreter.

During <u>initial contact</u> with patient, patient's family member, companion, or associate, the staff member will ask if they wish to have an SLI present for communication. Staff can also request an interpreter even if the patient, patient's family member, companion, or associate does not request services for themselves.

### 1.2 VIDEO RELAY SERVICE (VRS)

In lieu of an SLI, and to the extent feasible and/or necessary for effective communication with a patient, patient's family member, companion, or associate, VRS may be utilized as a communication aid. Similarly, if a patient or patient representative wishes to utilize VRS to communicate, this service may be requested by such patient or patient representative.

VRS equipment will be secured in the MIS Department and will be accessible upon request. The equipment is provided on a wireless cart, and is made available for use through various wireless access points within the facility, so long as the patient's condition allows him/her to be brought to the wireless location.

Alternatively, when logistically feasible, VRS may be made available at the patient's present location.

During <u>critical times</u>, (i.e., when obtaining consent, when participating in lengthy individual therapy sessions, and providing discharge instructions), if a patient, patient's family member, companion, or associate requiring a communication aid requests an SLI instead of VRS, an SLI <u>must</u> be provided. Pursuant to Interfaith's contract with its vendor, SLIs generally will be available within two hours of making a request to the vendor.

When a patient has requested the VRS, please do the following:

1. Contact the Patient Relations Office. During off hours, contact the A.D.N./Nursing Supervisor.
2. Complete the "Request for Communication or Auxiliary Aids" form.
3. The video cart will be brought to the wireless access point near the patient.

Deaf Talk provides VRS services at Interfaith. The process for utilizing VRS is as follows:

1. Plug in the power cord.
2. Turn on the Monitor (located on the bottom right of the screen).
3. Circle on back of white box must be blue. If not, call Hospital Help Desk at ext. 4091.
4. Adjust the camera (so that the patient is centered on the screen).
5. Using any hospital phone, call toll free: 1(866) 237-0174.
6. Select "Option 1" for American Sign Language.
7. Identify yourself with the proper Client/Unit ID Number.
8. The interpreter will then call your video unit. The call will automatically be answered.

Policy.DOC

9. Briefly describe the situation to the interpreter.
10. Introduce the patient and begin your questioning or conversation.
11. The interpreter will end the call when the session is completed.
12. Unplug the unit and disconnect the phone connection. (DO NOT TOUCH MONITOR SETTINGS.)
13. When finished, return the Video Cart to the appropriate location.

<u>Please Note</u>: <u>All</u> verbal comments will be transmitted by the relay operator to the other party. Only say what you want to have communicated.

### 1.3 TELECOMMUNICATION DEVICES FOR THE DEAF (TTY)

Telecommunication devices (TTY) are located throughout the hospital to receive incoming and make outgoing calls.

<u>TTYs for Patient and Public Use</u>

Upon admission, the need for a TTY should be immediately brought to the attention of the Nurse Manager on the patient's unit.

TTYs are available by contacting the Patient Relations Office. During off hours, TTYs are available by contacting the Nursing Supervisor, as well as the Communications Office.

### 2.0 REQUESTS FOR AUXILIARY AIDS

Certain Auxiliary Aids are made available to patients and patient representatives who are deaf or hard of hearing. Requests for auxiliary aids should be directed to the Department of Patient Relations between 9:00 AM and 5:00 PM. Before 9:00 AM, after 5:00 PM, and during weekends and holidays, the Assistant Director of Nursing on duty will handle such requests. Patients or Patient Representatives who seek auxiliary aids should request a "Request for Communication or Auxiliary Aid" form, which must be completed and returned prior to obtaining any auxiliary aid. Upon receipt of the Request form, the auxiliary aid will be provided to the patient or patient representative as soon as practicable by the Patient Relations Department or A.D.N. The Patient Relations Department or A.D.N. may require staff assistance in providing the auxiliary aid to the patient or patient representative. Auxiliary Aids must be provided as quickly as possible, and staff must take all appropriate steps to ensure that there is no undue delay in this process.

#### 2.1 DOORKNOCK SENSORS

Doorknock sensors are devices that are mounted on the door of a deaf or hard of hearing patient, so that when someone knocks on the patient's door, a light will flash near the patient's bed, so that he/she will know that someone is at the door.

#### 2.2 TELEPHONE AMPLIFIERS

Telephone Amplifiers are devices that are attached to a phone in a patient's room when the patient is hard of hearing. The device amplifies telephone conversations.

#### 2.3 CLOSED CAPTION TELEVISIONS

To ensure that closed caption television is available to individuals who are hard of hearing, Interfaith maintains televisions in patients' rooms that have closed captioning available. Such televisions are also available in the emergency department's waiting room.

#### 2.4 PATIENTS' BILL OF RIGHTS

If a patient or patient representative indicates that a written copy of the Patients' Bill of Rights is not sufficient, a video taped version with a person signing in American Sign

Language is available to patients who are deaf or hard of hearing.

## 3.0 UNIVERSAL "DEAF STICKERS"

Universal deaf stickers must be attached to the medical files of all patients who are deaf on admission.

Nurses stations will be equipped with universal deaf stickers as well. These stickers should be

- used on medical charts; and
- affixed to the call button signal of patients who are deaf or hard of hearing, so as to indicate that a patient cannot hear a response through the intercom.

Therefore, it is necessary that Interfaith staff walk into the patient's room when summoned by caller.

## 4.0 INITIAL ASSESSMENT OF NEED FOR COMMUNICATION AIDS OR AUXILIARY AIDS

Upon admission to Interfaith, if a patient is deaf or hard of hearing, he/she should be asked whether he/she requires any communication aid. Specifically, the patient (or his/her representative or companion) should be asked whether he/she requires:

- Interpretive services (either by SLI or VRS);
- To review the Patients' Bill of Rights via video cassette or with ASL interpreter;
- Auxiliary aids, such as doorknock sensors or telephone amplifiers;

After initial assessment, personnel should remain alert to <u>any</u> communication difficulties and should repeat these inquiries if such difficulties should arise.

## 5.0 OUTPATIENT APPOINTMENTS

5.1 When an outpatient appointment is made by the hospital, and it is assessed and verified that interpreter services will be needed during the visit, advanced notice is necessary to schedule an SLI. Call the Patient Relations Department immediately when appointment is made.

Whenever Patients who are Deaf or Hard of Hearing arrive for a scheduled appointment for which an SLI has been arranged, call the Patient Relations Department to confirm SLI services and a time frame for when the patient will be seen by the physician.

5.2 If a scheduled appointment is cancelled by the patient or department, call the Patient Relations Department to cancel services for the SLI.

## REGULATORY REFERENCES:

1.0 JCAHO – Patient Rights and Organizational Ethics RI.2.10, RI.2.100

   New York State Patients' Bill of Rights Section 405.7

## DOCUMENTATION

1.0 All requests by patients, patient representatives or medical personnel for either communication aids (such as SLIs, VRS, TTYs) or auxiliary aids (such as doorknock sensors, telephone amplifiers, closed caption television settings, and sign language versions of the Patients' Bill of Rights) must be communicated to the Patient Relations Department by calling Extension 4290 and documented on a "Request for Communication or Auxiliary Aid" form, a

Policy.DOC

copy of which must be maintained in the Patient Relations Department. A notation must also be made in the patient's medical record regarding the request and result of the request.

2.0    Copies of all completed "Request for Communication or Auxiliary Aid" forms will be kept by the Patient Relations Department. Such requests must be documented, and no Auxiliary or Communication Aid should be provided if no form is received.

Recommended by:

_____    _____
[redacted]                                             Date

Approved by:

_____    _____
[redacted]                                             Date

_____    _____
[redacted]                                             Date

Policy.DOC

## **APPENDIX B**

I. **Training**

    A.    <u>Implementation & Operation of the Video Relay Service (VRS)</u>

        1.    Interfaith will identify and designate a core set of staff positions representing relevant areas of patient care and administration, which provide coverage for all shifts on all days, including Assistant Directors of Nursing and/or Nursing Supervisors, certain therapists in the Psychiatry Department, Patient Relations Department staff, Nurse Educators, Social Workers and registration staff, to receive training in the operation of and use of the VRS system. The vendor providing VRS will provide initial training for this core staff as part of its contract. Substantial changes to this list of core staff shall be identified during the applicable review of Interfaith information, as set forth in Section III. C. of the Consent Order.

        2.    Interfaith will make provision for prompt training of new personnel who fill the core staff positions and will incorporate any necessary retraining or refresher training into the annual training obligations for such personnel.

        3.    All other employees with responsibilities for patient care or interaction with the public will be provided training regarding the availability of VRS and the personnel to contact to utilize it. This training shall become part of orientation training for all new employees and annual training obligations of existing employees.

    B.    <u>General Principles Regarding Training & Retraining</u>

        1.    Interfaith employees with responsibilities for patient care or interaction with incoming patients will be trained in the hospital's various policies and procedures during their orientation sessions upon the outset of employment, as well as annually thereafter. Mechanisms and procedures for patient complaints will be highlighted as part of this session.

        2.    Members of the Patient Relations Department will be trained and annually re-trained in the documentation of all patient complaints, as well as the logging of all requests for video relay service, TTY, doorknockers, amplified telephones, and all other special requests pursuant to the policy attached as Appendix A.

        3.    Records of attendance at all training and retraining sessions will be made and retained for two years after each session.

C. <u>Specific Training Commitments</u>

1. The Hospital will integrate into its mandatory in-service training for Hospital Personnel with patient responsibility materials that address the special needs of deaf and hard of hearing patients and their companions utilizing the Hospital. This training will include the following objectives: to promptly identify communication needs and preferences of persons who are deaf or hard of hearing; to secure qualified interpreter services as quickly as possible when necessary; and training on the availability of auxiliary aids and services.

2. Personnel responsible for obtaining insurance information for billing purposes who routinely interact with patients and their companions shall receive annual training on the availability of auxiliary aids and services.

3. All Hospital Personnel who receive incoming telephone calls from the public will receive appropriate instructions regarding use of TTYs and relay or similar services, as suitable for their assignment (*i.e.*, personnel who do not use TTY-enabled telephones will not receive special instruction on using TTYs).

4. With regard to any Hospital Personnel not trained under the preceding sections who have responsibilities for patient care or interaction with the public, the Hospital will develop and implement appropriate training, which the Hospital in its sole discretion will determine, to take place at such times as the Hospital determines is necessary to permit the Hospital to meet all of its obligations under its policies.

D. <u>Written Materials</u>

Within one hundred twenty (120) days of the entry of the Consent Order, the Hospital will distribute a set of written materials to all relevant staff. These materials will contain at least the following: the Hospital's Policy Statement regarding services to patients and their companions who are deaf or hard of hearing and any relevant forms; a description of the Hospital's Policy and a request that physicians or staff members notify the Hospital about patients and their companions as soon as they schedule admissions, tests, surgeries or other health care services at the Hospital.

## II. Documentation

A. All relevant personnel shall document, and forward same to the Patient Relations Department, each and every intake during which the patient or a patient representative asks or is asked about the need for a communication aid or an auxiliary aid, as defined in Appendix A. Such requests must be recorded on a "Request for Communication or Auxiliary Aid" form. All completed forms must be forwarded to the Patient Relations Department.

B. All requests of the Patient Relations Department or of the Assistant Director of Nursing (during non-business hours) for communication aids or auxiliary aids must be recorded on a "Request for Communication or Auxiliary Aid" form. The Patient Relations Department must indicate on the form what actions were taken in response to the request (i.e., whether the aid was provided, and if not, why not).

C. All personnel who receive complaints, whether written or non-written, concerning the need for a communication aid or auxiliary aid, shall forward a record of those complaints to the Patient Relations Department. The procedures for documenting patient complaints shall be highlighted in the training sessions described in Section I. Interfaith's Patient Relations Department will maintain a log reflecting all patient complaints, and will specifically instruct members of that department to officially log all non-written complaints.

D. A record of all video relay service training sessions will be maintained for a period of two years.